## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| NICHOLAS BRIMAGER, <br><br> and <br><br> JASON GRAHAM, <br><br>        Plaintiffs, <br><br> vs. <br><br> CITY OF MOSCOW MILLS, <br><br> and <br><br> TERRY FOSTER, in his <br> individual and official capacities, <br><br> Serve: <br><br> City of Moscow Mills <br> 995 Main Street <br> Moscow Mills, MO 63362 <br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case Number:<br><br>   ***Jury Trial Demanded*** |

## PETITION for DAMAGES

### Nature of the Claim

This is an action pursuant to 42 U.S.C. §2000e *et. seq.* -Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981 and 1983, the Whistleblower Protection Act (WPA) (5 U.S.C. § 2302(b)(8)), and also §§ 213.010 RSMo., 213.055 RSMo., §213.070 RSMo. & §105.055 RSMo. for gender discrimination, disparate treatment, retaliation and hostile work environment as against Plaintiffs Nicholas Brimager, and Jason Graham during their employment with the City of Moscow Mills through the Moscow Mills Police Department. This cause of action is being filed for purposes of seeking redress for these unlawful employment practices as they relate to retaliation for whistleblowing.

1

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff Nicholas Brimager (hereinafter "Brimager") is a resident of the City of Wentzville, Missouri and a citizen of the United States of America.  At all times relevant herein, Brimager was employed by the City of Moscow Mills, through the Moscow Mills Police Department (hereinafter "Police Department"), located in the City of Moscow Mills, Lincoln County, State of Missouri, and in the Eastern Division of the Eastern District of Missouri.

2.      Plaintiff Jason Graham (hereinafter "Graham") is a resident of the City of Lake Saint Louis, Missouri and a citizen of the United States of America.  At all times relevant herein, Graham was employed by the City of Moscow Mills, through the Moscow Mills Police Department (hereinafter "Police Department"), located in the City of Moscow Mills, Lincoln County, State of Missouri, and in the Eastern Division of the Eastern District of Missouri.

3.      Defendant City of Moscow Mills, Missouri (hereinafter "City) is a municipal corporation organized and existing under the laws of the State of Missouri.

4.      Defendant Terry Foster (hereinafter "Chief Foster") was at all times relevant herein and still remains the Department's Chief of Police.  Chief Foster has ultimate supervisory authority over all facets of the Department.  He is being sued in his individual and official capacities.

5.      The adverse employment actions Plaintiffs suffered as set forth in more detail below occurred in the City of Moscow Mills, Lincoln County, State of Missouri, within the Eastern Division of the Eastern District of Missouri.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide any claims arising under state law pursuant to 28 U.S.C. §1367.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

8.      Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

9.      All conditions precedent to the initiation of this lawsuit have been fulfilled by each of the Plaintiffs.

10.      Plaintiff Brimager filed his Charge of Discrimination with the United States Equal Employment Opportunity Commission- St Louis, Missouri Division (hereinafter "EEOC") on December 28, 2021.  A copy of Plaintiff's Charge of Discrimination (Charge No. 28E202200315) is attached hereto and incorporated by reference herein as **Exhibit A**.  The EEOC issued its Notice of Right to Sue to Plaintiff on July 11, 2022, more than 180 days after the filing of the underlying Charge.  A copy of Plaintiff's Notice of Right to Sue is attached hereto and incorporated by reference herein as **Exhibit B.**  The present action is being brought within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue correspondence as generated by the EEOC.

11.      Plaintiff Graham filed his Charge of Discrimination with the United States Equal Employment Opportunity Commission- St Louis, Missouri Division (hereinafter "EEOC") on January 4, 2022.  A copy of Plaintiff's Charge of Discrimination (Charge No. 28E202200326) is attached hereto and incorporated by reference herein as **Exhibit C**.  The EEOC issued its Notice of Right to Sue to Plaintiff on September 30, 2022, more than 180 days after the filing of the underlying Charge.  A copy of Graham's Notice of Right to Sue is attached hereto and incorporated by reference herein as **Exhibit D**.  The present action is being brought within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue correspondence as generated by the EEOC.

## Nicholas Brimager

12.      At the time of the acts complained herein, Plaintiff Brimager had been employed as a police officer for the City of Moscow Mills since 2019.  In November 2019, the City of Moscow Mills recruited Brimager to transfer to its Police Department as a Lieutenant/Assistant Chief of

3

Police. Brimager started with the Police Department on December 2, 2019 in that capacity, where he worked alongside Chief Foster.

13.     Throughout his employment with the Police Department, Brimager performed his supervisory duties in a satisfactory or above-level manner, often assuming the role of acting Chief of Police in Chief Foster's absence.

### Jason Graham

14.     At the time of the acts complained herein, Plaintiff Graham had been employed as a police officer for the City of Moscow Mills since September 2013.

15.     Throughout his employment with the Police Department, Graham performed his supervisory duties in a satisfactory or above-level manner where he was ultimately promoted to Sergeant. Graham was further charged with handling IT issues and other technology-related responsibilities for the Police Department.

### Chief Foster and the City of Moscow Mills

16.     Upon information and belief, Defendants have a history of engaging in various acts of employment illegality, including discrimination, retaliation, and otherwise creating a hostile work environment.

17.     Upon information and belief, Defendants have a history of engaging in employment illegality, or otherwise punishing City employees, namely male employees, for calling attention to acts of discrimination or criminal conduct- whistleblowing.

19.     Defendant Foster, as Chief of Police, was in Brimager and Graham's direct chain of command, and therefore held supervisory authority over each of them.

20.     Upon information and belief, Chief Foster has a history of using his physicality and referencing prior physical entanglements to ensure his demands and/or orders are carried out by subordinates, and also as a means to intimidate subordinates from complaining about his behavior.

21.     Upon information and belief, Chief Foster has a history of homophobia, often accusing subordinates of being homosexual and expressing his hatred of homosexuality.

22.     Chief Foster also has a history of publicly berating subordinates in order to humiliate them before peers and members of the public when he perceives his authority is being challenged. Chief Foster routinely employed use of sexually charged, homophobic, discriminatory and intimidating rhetoric to subordinates to ensure compliance.  This included language such as calling various City employees "fags", "gay", "homo", or "bitch" when he perceived them as less than masculine.

23.     For example, Chief Foster called Plaintiff Brimager, his Assistant Chief of Police, a "pussy" for questioning his use of an illicit ticket generating scheme and for not getting involved with CrossFit "like a real man."  Chief Foster further explained to Plaintiff Brimager that he had a "mangina" and/or that Plaintiff Brimager was "afraid to get sand in his vagina" for not engaging in Chief Foster's chosen plan of action at the time.  Chief Foster's use of this language was well-known throughout the Police Department and regularly employed without regarding for who was present.

24.     Chief Foster's commentary was not limited to Plaintiff Brimager.  Chief Foster also directed his ire toward Plaintiff Graham for the same or similar reasons.  Specifically, Chief Foster called Plaintiff Graham a "pussy", "fag", "cocksucker" and "motherfucker".

25.     Chief Foster would not treat female employees in the same manner.  Instead, Chief Foster joked about having more "ladies" around, including "lesbians".

26.     In addition to using the terms heretofore described, Chief Foster would also repeatedly reference his boxing/fighting past as a former Golden Gloves boxer in order to intimidate subordinates, including Plaintiffs.  Chief Foster would often invade the personal space of subordinates, and use his physicality in a way to dissuade any questioning of his authority.

27.     For purposes of an applicable timeframe, Chief Foster's behavior continued from at least 2019 through 2021 and 2022.   Due to his unorthodox use of physicality and demeaning language, morale at the Police Department was extremely low, causing multiple resignations.

**<u>Ticket-Generating Scheme and Attorney General Lawsuit</u>**

28.     Upon information and belief, Chief Foster and the City of Moscow Mills engaged in a ticket-generating scam in order to obtain the monetary benefit of excessive traffic fines.

29.     Chief Foster, by means of a pattern of intimidation, threats, discrimination and other acts of employment illegality ordered subordinates to issue a certain number of traffic citations every month to generate additional revenue for the City.

30.     Chief Foster further encouraged subordinates to focus on the "soccer moms" and other drivers operating nicer, more expensive vehicles as those drivers would be financially capable of just paying the fines.

31.     Chief Foster and the City's scheme was in express violation of State law forbidding such ticket-generating practices.

32.     As Assistant Chief of Police, Plaintiff Brimager expressed his disapproval of the ticket-generating scheme and informed Chief Foster that he would not participate.  This occurred in early 2021.

33.     As Sergeant, Plaintiff Graham joined with Plaintiff Brimager and informed Chief Foster that he would not only refuse to participate in the ticket-generating scheme, that he would also instruct other officers to do the same.

34.     Chief Foster informed both Plaintiffs that he would make sure that they lost their jobs as a result of their refusal to participate in the ticket-generating scheme and ratcheted up his rhetoric as to their homosexuality as was his now well-known pattern of subordinate abuse.

35.     On November 18, 2021, The Attorney General for the State of Missouri filed a lawsuit against the City of Moscow Mills for the ticket-generating scheme in the Circuit Court for Lincoln County.  A copy of the *Petition for Declaratory & Injunctive Relief* and *Consent Judgment* have been memorialized under Cause No. 21L6-CC00149, and are attached hereto collectively as **Exhibit E.**

36.     Plaintiffs Brimager and Graham were whistleblowers to the ticket-generating scheme, providing detailed information to the Missouri Attorney General's Office after their complaints of were summarily rejected by the City.

37.     After learning of their complaints, and participation in the Attorney General's investigation, Chief Foster embarked on a mission to ensure Plaintiffs would not work for the City much longer.  For example, in late November and into early December 2021, Chief Foster made it known to Plaintiffs co-workers that they were "rats", "informants", "faggots" among other colorful labels, and told subordinates not to communicate with them in any fashion as a means to isolate them.

38.     Another example of Chief Foster's retaliation included spreading falsehoods that Plaintiffs stole from the City, were untrustworthy and were being fired.

39.     Chief Foster's behavior was so outrageous that Plaintiffs were forced to exhaust leave time, when allowed, and eventually resign from their respective positions.  This occurred in early 2022.

40.     City officials, including the Mayor, were all aware of Chief Foster's behavior and the ticket-generating scheme, and were otherwise complicit.

41.     Plaintiffs filed complaints with the City regarding Chief Foster's behavior as early as June 2021 and again in November 2021.  Notwithstanding the filing of the Attorney General's lawsuit, these complaints were closed as without merit.

42.     Although aware of Chief Foster's participation in the ticket-generating scheme, his discriminatory conduct, retaliation and physical intimidation, City officials did nothing to prevent the Chief from further their objectives of more revenue.

43.     In full coordination with the Mayor and other City officials, Chief Foster engaged in a series of actions designed to punish Plaintiffs for being whistleblowers. Chief Foster further ordered his staff to assist in these actions. This created a hostile working environment that continues to the present day.

44.     Chief Foster, with the approval of the City, isolated Plaintiffs from their peers, and otherwise subjected Plaintiffs to disparate treatment and retaliation as follows: (a) not including Plaintiffs in certain meetings; (b) denying leave and/or training; (c) denying awards for service; (c) precluding overtime or causing the loss of overtime through abrupt schedule changes; (d) publicly disparaging Plaintiffs; (e) using obscene language towards Plaintiff when questioned; (f) changing schedules to preclude consistency; and (g) physically intimidating Plaintiffs. Other City employees were not subjected to similar treatment.

45.     Again, Plaintiff's complained to regarding the treatment described more particularly particularly in Factual Statement No. 42 without success.   Instead, Chief Foster expressed anger for complaining in the first place. He further cautioned Plaintiff's from involving City officials.

46.     Collectively, Defendants have engaged in illegal discrimination, retaliation and other acts of employment illegality against Plaintiffs because of their gender, perceived sexual orientation, for whistleblowing and otherwise complaining of employment illegality and other potentially criminal conduct.

47.     Plaintiffs have been treated differently than similarly situated employees by Defendants in the terms and conditions of their employment because of their willingness to question Defendants behavior.

8

48.     Defendant Foster and Defendant City officials, including Mayor, were at all times alleged herein acting as agents of Defendants and acting within the course and scope of their employment/duties.  The actions of the Defendants and employees as alleged above were intentional.

49.     The actions of the Defendant and Defendant's agents as alleged above were done with malice and/or reckless indifference to the federally protected rights of Plaintiffs.

50.     As a direct and proximate result of the acts of Defendants as alleged herein, Plaintiffs were subjected to disparate and unequal treatment, and retaliation.  Additionally, and without waiver of the foregoing, Plaintiffs have suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation.

<u>Count I</u>

**Unlawful Employment Practice (Gender Discrimination)**
**Plaintiff Nicholas Brimager**

51.     Plaintiff Nicholas Brimager hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52.     The conduct of Defendants and their employees, as alleged above, affected a term, condition or privilege of the Plaintiff's employment.

53.     The disparate treatment of the Plaintiff, as practiced by Defendants and their employees, as alleged above, was of a sexually discriminatory nature, and/or discrimination based on Plaintiff's gender and/or perceived sexual orientation.

54.     The sexual/gender discrimination of Plaintiff by Defendants and their employees, as alleged above, was sufficiently pervasive and severe to create a discriminatory work environment for Plaintiff.

55.     The conduct of Defendants and their employees, as alleged above, was engaged in while in the scope of, and during their course of, employment.

56.     Defendants were fully informed, or should have been fully informed, to have had sufficient knowledge of the material facts and circumstances relevant to the conduct of Defendants and their employees, and did nothing to prevent further acts of misconduct, acquiesced in, approved and ratified the actions of their employees, and are therefore liable for the actions of their employees.

57.     The conduct of Defendants and their employees, as alleged above, constitutes sexual/gender discrimination in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1963 and the Civil Rights Act of 1991, and in violation of 42 U.S.C. 2000-e2 (a) (1) in that such actions created disparate treatment on account of his sex, that being male.

58.     The actions of the Defendant and their employees were intentional

59.     The actions of the Defendant and their employees, as alleged above, were intentional and demonstrated a willful, wanton, and/or reckless indifference and disregard to the rights of Plaintiff such that punitive damages should be assessed against Defendants.

60.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered economic loss in the form of lost wages, lost benefits and related consequential damages; vocational and professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses; emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of physical stress, embarrassment, humiliation and anxiety.

WHEREFORE, Plaintiff Nicholas Brimager prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by

granting him equitable relief to include but not necessarily be limited to awarding damages for any and all losses or damages he has suffered, including lost wages associated with being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with his reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count II

### Unlawful Discriminatory Practice (Retaliation) & Whistleblower Protection
### Plaintiff Nicholas Brimager

61.     Plaintiff Nicholas Brimager hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 above as if fully set forth herein.

62.     Defendants intentionally engaged in unlawful employment practices by discriminating against the Plaintiff based upon retaliation for having complained about sex/gender discrimination, that being disparate treatment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f).

63.     Defendants intentionally engaged in unlawful employment practices by discriminating against the Plaintiff based upon retaliation for having complained about the illicit ticket-generating scheme, obscenities and hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f), and also the Whistleblower Protection Act (WPA) (5 U.S.C. § 2302(b)(8)).

64.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered:

a)    Economic loss in the form of lost wages, lost benefits and related
      consequential damages;

b)    Vocational/Professional losses in the form of a detrimental job record,
      career damage, a diminished career potential and future pecuniary losses;

c)    Emotional pain, suffering, inconvenience, loss of enjoyment of life, and
      mental distress, in the form of embarrassment, humiliation, and anxiety.

65.    As a further direct and proximate result of Defendant's unlawful acts, Plaintiff is also
entitled to such affirmative relief as may be appropriate including but not limited to permanent
injunction, lost wages and benefits, and his reasonable attorney's fees incurred herein, pursuant to
the provisions of federal law as cited above.

66.    The discrimination described herein above against Plaintiff by Defendants was
intentional, willful, wanton, malicious, and/or reckless disregard and indifference to the rights of
others, thus entitling Plaintiff to exemplary damages.

       WHEREFORE, Plaintiff Nicholas Brimager prays this Court enter judgment in his
favor and against the Defendants and thereafter order Defendants to make him whole by
granting him equitable relief to include but not necessarily be limited to awarding damages for any
and all losses or damages he has suffered, including lost wages associated with being forced to
resign, lost promotional opportunities; awarding damages to Plaintiff for his emotional injuries,
including but not limited to emotional pain and suffering, mental anguish, inconvenience,
humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation;
awarding Plaintiff punitive damages against the individual Defendants in their individual
capacities in such sum as this Court believes will serve to punish them and to deter them and
others from like conduct; awarding Plaintiff the costs of this action, together with his
reasonable attorneys' fees; and granting such other and further relief as may appear to the Court

to be equitable and just under the circumstances.

## Count III

### Unlawful Discriminatory Practice (Hostile Work Environment)
### Plaintiff Nicholas Brimager

67.     Plaintiff Nicholas Brimager incorporates and re-alleges paragraphs 1-66 and for his Hostile Work Environment in employment action against Defendants hereby states and alleges as follows.

68.     Plaintiff is a member of a protected group because of his previous protected activity, to include reporting instances of employment illegality and otherwise being a witness to the same.

69.     Plaintiff was subjected to an unwelcome hostile work environment because of this protected activity, and in retaliation by Defendant for those actions as set forth in detail above.

70.     Plaintiff's protected activities were all contributing factors in the harassment/hostile work environment he endured as a result of the Defendant's actions as set forth in detail above.

71.     The terms, conditions and/or privileges of Plaintiff's employment were affected by the harassment/hostile work environment.

72.     Defendants knew or should have known of the harassment/hostile work environment, failed to take appropriate action to prevent it, and instead directly participated in the same, or upon information and belief, encouraged it.

73.     Defendants' conduct was severe and pervasive, thus creating a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f).

74.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered:

    a)     Economic loss in the form of lost wages, lost benefits and related consequential damages;

b)      Vocational/Professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses;

c)      Emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of embarrassment, humiliation, and anxiety.

75.     As a further direct and proximate result of Defendant's unlawful acts, Plaintiff is also entitled to such affirmative relief as may be appropriate including but not limited to permanent injunction, lost wages and benefits, and his reasonable attorney's fees incurred herein, pursuant to the provisions of federal law as cited above.

76.     The discrimination described herein above against Plaintiff by Defendants was intentional, willful, wanton, malicious, and/or reckless disregard and indifference to the rights of others, thus entitling Plaintiff to exemplary damages.

WHEREFORE, Plaintiff Nicholas Brimager prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by granting him equitable relief to include but not necessarily be limited to awarding damages for any and all losses or damages he has suffered, including lost wages associated with being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with his reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count IV

### Unlawful Employment Practice (Gender Discrimination)
### Plaintiff Jason Graham

77.     Plaintiff Jason Graham hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 above as if fully set forth herein.

78.     The conduct of Defendants and their employees, as alleged above, affected a term, condition or privilege of the Plaintiff's employment.

79.     The disparate treatment of the Plaintiff, as practiced by Defendants and their employees, as alleged above, was of a sexually discriminatory nature, and/or discrimination based on Plaintiff's gender and/or perceived sexual orientation.

80.     The sexual/gender discrimination of Plaintiff by Defendants and their employees, as alleged above, was sufficiently pervasive and severe to create a discriminatory work environment for Plaintiff.

81.     The conduct of Defendants and their employees, as alleged above, was engaged in while in the scope of, and during their course of, employment.

82.     Defendants were fully informed, or should have been fully informed, to have had sufficient knowledge of the material facts and circumstances relevant to the conduct of Defendants and their employees, and did nothing to prevent further acts of misconduct, acquiesced in, approved and ratified the actions of their employees, and are therefore liable for the actions of their employees.

83.     The conduct of Defendants and their employees, as alleged above, constitutes sexual/gender discrimination in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1963 and the Civil Rights Act of 1991, and in violation of 42 U.S.C. 2000-e2 (a) (1) in that such actions created disparate treatment on account of his sex, that being male.

84.     The actions of the Defendant and their employees were intentional

85.     The actions of the Defendant and their employees, as alleged above, were intentional and demonstrated a willful, wanton, and/or reckless indifference and disregard to the rights of Plaintiff such that punitive damages should be assessed against Defendants.

86.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered economic loss in the form of lost wages, lost benefits and related consequential damages; vocational and professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses; emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of physical stress, embarrassment, humiliation and anxiety.

WHEREFORE, Plaintiff Jason Graham prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by granting him equitable relief to include but not necessarily be limited to awarding damages for any and all losses or damages he has suffered, including lost wages associated with being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with his reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count V

### Unlawful Discriminatory Practice (Retaliation) & Whistleblower Protection
### Plaintiff Jason Graham

87.    Plaintiff Jason Graham hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 86 above as if fully set forth herein.

88.    Defendants intentionally engaged in unlawful employment practices by discriminating against the Plaintiff based upon retaliation for having complained about sex/gender discrimination, that being disparate treatment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f).

89.    Defendants intentionally engaged in unlawful employment practices by discriminating against the Plaintiff based upon retaliation for having complained about the illicit ticket-generating scheme, obscenities and hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f), and also the Whistleblower Protection Act (WPA) (5 U.S.C. § 2302(b)(8)).

90.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered:

   a)    Economic loss in the form of lost wages, lost benefits and related consequential damages;

   b)    Vocational/Professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses;

   c)    Emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of embarrassment, humiliation, and anxiety.

91.    As a further direct and proximate result of Defendant's unlawful acts, Plaintiff is also entitled to such affirmative relief as may be appropriate including but not limited to permanent injunction, lost wages and benefits, and his reasonable attorney's fees incurred herein, pursuant to the provisions of federal law as cited above.

92.     The discrimination described herein above against Plaintiff by Defendants was intentional, willful, wanton, malicious, and/or reckless disregard and indifference to the rights of others, thus entitling Plaintiff to exemplary damages.

WHEREFORE, Plaintiff Jason Graham prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by granting him equitable relief to include but not necessarily be limited to awarding damages for any and all losses or damages he has suffered, including lost wages associated with being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with his reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count VI

### Unlawful Discriminatory Practice (Hostile Work Environment)
### Plaintiff Jason Graham

93.     Plaintiff Jason Graham incorporates and re-alleges paragraphs 1-92 and for his Hostile Work Environment in employment action against Defendants hereby states and alleges as follows.

94.     Plaintiff is a member of a protected group because of his previous protected activity, to include reporting instances of employment illegality and otherwise being a witness to the same.

95.     Plaintiff was subjected to an unwelcome hostile work environment because of this protected activity, and in retaliation by Defendant for those actions as set forth in detail above.

96.     Plaintiff's protected activities were all contributing factors in the harassment/hostile work environment he endured as a result of the Defendant's actions as set forth in detail above.

97.     The terms, conditions and/or privileges of Plaintiff's employment were affected by the harassment/hostile work environment.

98.     Defendants knew or should have known of the harassment/hostile work environment, failed to take appropriate action to prevent it, and instead directly participated in the same, or upon information and belief, encouraged it.

99.     Defendants' conduct was severe and pervasive, thus creating a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f).

100.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered:

   a)      Economic loss in the form of lost wages, lost benefits and related consequential damages;

   b)      Vocational/Professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses;

   c)      Emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of embarrassment, humiliation, and anxiety.

101.    As a further direct and proximate result of Defendant's unlawful acts, Plaintiff is also entitled to such affirmative relief as may be appropriate including but not limited to permanent injunction, lost wages and benefits, and his reasonable attorney's fees incurred herein, pursuant to the provisions of federal law as cited above.

102.    The discrimination described herein above against Plaintiff by Defendants was intentional, willful, wanton, malicious, and/or reckless disregard and indifference to the rights of others, thus entitling Plaintiff to exemplary damages

WHEREFORE, Plaintiff Jason Graham prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by granting him equitable relief to include but not necessarily be limited to awarding damages for any and all losses or damages he has suffered, including lost wages associated with being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with his reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count VII

### Conspiracy to Violate Civil Rights
### Plaintiffs Nicholas Brimager & Jason Graham

103.     Plaintiffs Nicholas Brimager & Jason Graham hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 102 above as if fully set forth herein.

104.     Defendants, acting under color of law, conspired together and amongst themselves and as a result reached a mutual understanding to deny Plaintiffs their rights to a discrimination-free work environment based on gender and for whistleblowing, and then to engage in a series of retaliatory actions and otherwise disparate treatment as a means to punish Plaintiffs for complaining about said discrimination and for whistleblowing to an outside resource when Defendants refused to rectify their illegal actions and behavior.  Additionally and without waiver of the foregoing, Defendants conspired to undertake a course of conduct to protect each other from the consequences of their constitutional and statutory violations, which in furtherance of the

conspiracy violated Plaintiffs' constitutional right to equal protection under the laws and federal statutory rights to be free from discrimination, retaliation and a hostile work environment.

In furtherance of this conspiracy, Defendants committed the following overt acts:

a.      Defendants, through Chief Foster, physically and psychologically abused Plaintiffs for challenging his authority and/or for whistleblowing about the ticket-generating scheme and his outrageous conduct.

b.      Defendants refused to provide Plaintiffs a valid explanation for their employment illegality and/or to remedy said illegality.

c.      Defendants created this discriminatory and abusive environment as means to force compliance with illegal activities and to cover-up for an out-of-control Chief of Police.

d.      Defendants failed to take appropriate action to ensure Plaintiffs were being protected from discrimination, retaliation and a hostile work environment, failed to investigate Plaintiffs' respective complaints, and otherwise assisted Chief Foster and other employees with their efforts to continue the illegal ticket-generating scheme as well as Chief Foster's personal choices and to punish Plaintiffs for registering complaints.

e.      When Plaintiffs filed an internal grievance/complaint regarding the discriminatory conduct and scheme and the manner in which each was occurring, Defendants failed to properly investigate the complaint and would not even provide Plaintiffs with a response to the complaints in an effort to conceal their illegal actions.

f.      Defendants engaged in the conduct as set forth herein to protect themselves from the consequences of their misconduct.

105.    Defendants shared the general conspiratorial objective which was to promote deny Plaintiffs their rights and to punish them for complaining. Such conduct was so pervasive in the City and Police Department and/or was engaged in by Chief Foster with final policymaking

authority, that Chief Foster and those assisting him were effectively insulated from internal sanction, and therefore, Defendants felt free to engage in the misconduct as aforementioned without any fear of sanction or retribution.

106.    Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability for the outrageous and unlawful acts of the Defendants as described herein, showing a tacit understanding to carry out the prohibited conduct.

107.    As a direct and proximate result of the conspiracy amongst the Defendants and in furtherance thereof, Plaintiffs were forced to resign and thereby deprived of their constitutional rights to equal protection under the laws secured by the 14th Amendment to the United States Constitution and their federal statutory right to be free from illegal discrimination as secured by Title VII of the Civil Rights Acts of 1964 and 42 U.S.C. § 1981, protected by 42 U.S.C. § 1983.

108.    As a direct and proximate result the acts of the Defendants as alleged herein, Plaintiffs likely lost other promotional opportunities as a result in the future.  Additionally, and without waiver of the foregoing, as a direct and proximate result of the acts of the Defendants as alleged herein, Plaintiffs have suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of their professional reputations.

109.    The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiffs' constitutional and federal statutory rights as set forth above, justifying an award of punitive damages against the Defendants in their individual capacities.

WHEREFORE, Plaintiffs Nicholas Brimager & Jason Graham pray this Court enter judgment in their favor and against the Defendants and thereafter order Defendants to make them whole by granting them equitable relief to include but not necessarily be limited to: awarding them damages for any and all loses or damages they have suffered, including lost wages associated with said promotion, lost promotional opportunities; awarding damages to Plaintiffs for emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of their professional reputations; awarding Plaintiffs punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiffs the costs of this action, together with their reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count VIII

### Failure to Train, Instruct, Supervise, Control and/or Discipline
### Cognizable Under 42 U.S.C. § 1983
### Plaintiffs Nicholas Brimager & Jason Graham

110.    Plaintiffs Nicholas Brimager & Jason Graham hereby reallege and incorporate by reference the allegations contained in paragraphs 1 through 109 above as if fully set forth herein.

111.    While the Police Department purportedly has policies and procedures prohibiting discrimination and requiring employees to report discrimination, there exists within the Police Department policies or customs, practices and usages that were so pervasive that they constitute the policies of these Defendants, that caused the violation of Plaintiffs' respective constitutional and federally statutory rights as set forth herein.

112.     Defendant Chief Foster is the ultimate supervisory officer within the Police
Department and actions or refusal to act, by and with other Defendant City employees, including
the Mayor and other City officials, established the policies of Defendants to foster, condone, or
otherwise tolerate conduct that violates the constitutional and federal statutory rights of employees
of the Police Department in general and specifically the conduct described in this Petition for
Damages.  Had these Defendants acted affirmatively to properly train and supervise law
enforcement personnel, to include Chief Foster, and those under his command or control and/or to
properly discipline the law enforcement personnel when they conduct themselves in ways that
violate the constitutional and federal statutory rights of others, the discrimination against Plaintiffs
on the basis of gender, for retaliation and whistleblowing, would not have occurred.

113.     In an effort to protect themselves and those other City-employees engaged in acts
of illegal discrimination, Chief Foster disregarded Plaintiffs' complaints regarding employment
illegality and whistleblowing so that his own negligent training and supervision would not be
discovered.   Alternatively, and without waiver of the foregoing, Chief Foster did so to protect
himself from the consequences of his own misconduct.

114.     Similarly, the City and its employees, through their defined
supervisory/administrative authority, served as the policy making body governing the law
enforcement personnel described herein.  Defendants' collective failure to affirmatively act in the
face of the transgressions described herein of which they knew or should have known, thereby
established the policies of these Defendants to foster, condone and otherwise tolerate conduct that
violates the constitutional and federal statutory rights of employees of the Department in general
and the rights of Plaintiff as set forth in this Complaint.  Alternatively, these Defendants delegated
and abrogated all or part of their policymaking power. Had these Defendants
affirmatively acted to properly train and/or supervise the law enforcement personnel under their

control and/or to properly discipline the law enforcement personnel under their control when they conduct themselves in ways that violate the constitutional and federal statutory rights of others, the discrimination/employment illegality against Plaintiffs would not have occurred.

115.     The collective actions or failures of Defendants were in violation of 42 U.S.C. § 1983.

116.     In their actions or failures as above described, Defendants intentionally disregarded known facts or alternatively were deliberately indifferent to a risk of violating the federal rights of others, of which they knew or should have known, and their culpability caused the violation of Plaintiffs' federally protected constitutional and statutory rights.

117.     As a direct and proximate result the acts of the Defendants as alleged herein, Plaintiffs likely lost other promotional opportunities as a result in the future.  Additionally, and without waiver of the foregoing, as a direct and proximate result of the acts of the Defendants as alleged herein, Plaintiffs have suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of their professional reputations.

118.     The conduct of Defendants was recklessly and callously indifferent to the federally established rights of Plaintif, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish these Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs Nicholas Brimager & Jason Graham pray this Court enter judgment in their favor and against the Defendants and thereafter order Defendants to make them whole by granting them equitable relief to include but not necessarily be limited to: awarding her damages for any and all loses or damages they have suffered, including lost wages associated with said promotion, lost promotional opportunities; awarding damages to Plaintiffs for emotional

injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of their professional reputations; awarding Plaintiffs punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiffs the costs of this action, together with their reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

THE LAW OFFICES OF JOHN M. LYNCH, LLC.


E/S JOHN M. LYNCH
John M. Lynch, 56604MO
5770 Mexico Road, Suite A
Saint Peters, MO 63376
(314) 726-9999 telephone
(314) 726-9199 facsimile
jlynch@lynchlawonline.com

***Attorneys for Plaintiffs Nicholas Brimager
& Jason Graham***

STATE OF MISSOURI          )
                                      ) SS
COUNTY OF ST. CHARLES     )

      I, NICHOLAS BRIMAGER, of lawful age, being first duly sworn upon my oath, state that I am the Plaintiff named above; and that the facts stated in my Petition for Damages herein are true and accurate to the best of my knowledge, information and belief, and that I executed said Answer of my own free act and deed.

*Nicholas Brimager*
**Nicholas Brimager- Plaintiff**

      Subscribed and sworn to before me this 7th day of October, 2022, a Notary Public in and for said state and personally appeared **Nicholas Brimager,** known to me to be the person who executed the Complaint, and acknowledged to me that she executed the same for the purposes therein stated; that she executed the same as his free act and deed and stated that the facts contained therein are true and correct to the best of her knowledge, information and belief.

My term expires:

6 | 8 | 2026

(Notary Seal)

*J. L. Das*
Notary Public

```
JENNA LAURENE DALE
Notary Public - Notary Seal
STATE OF MISSOURI
ST. CHARLES COUNTY
COMMISSION # 22544185
MY COMMISSION EXPIRES: JUNE 8, 2026
```

STATE OF MISSOURI            )
                                    ) SS

COUNTY OF ST. CHARLES    )

       I, JASON GRAHAM, of lawful age, being first duly sworn upon my oath, state that I am the Plaintiff named above; and that the facts stated in my Petition for Damages herein are true and accurate to the best of my knowledge, information and belief, and that I executed said Answer of my own free act and deed.

**Jason Graham- Plaintiff**

       Subscribed and sworn to before me this 7ᵗʰ day of October, 2022, a Notary Public in and for said state and personally appeared **Jason Graham,** known to me to be the person who executed the Complaint, and acknowledged to me that she executed the same for the purposes therein stated; that she executed the same as his free act and deed and stated that the facts contained therein are true and correct to the best of her knowledge, information and belief.

Notary Public

My term expires:

6/8/2026

(Notary Seal)

JENNA LAURENE DALE
Notary Public - Notary Seal
STATE OF MISSOURI
ST. CHARLES COUNTY
COMMISSION # 22544185
MY COMMISSION EXPIRES: JUNE 8, 2026