IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS BRIMAGER, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:22-CV-01076-AGF |
| ) | |
| CITY OF MOSCOW MILLS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of Moscow Mills and Terry Foster's motion to dismiss. Doc. No. 29. In the first amended complaint, Plaintiffs Nicholas Brimager and Jason Graham assert claims of gender discrimination (Counts I and IV), retaliation (Counts II and V), hostile work environment (Counts III and VI), conspiracy to violate civil rights (Count VII), and failure to train under 42 U.S.C. § 1983 (Count VIII).

Defendants seek dismissal of all claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As discussed in further detail below, Plaintiffs' claims of hostile work environment and conspiracy to violate civil rights will be dismissed without prejudice for failure to state a claim. Plaintiffs' claims of discrimination, retaliation, and § 1983 failure to train have sufficiently alleged a cause of action upon which relief can be granted.

## BACKGROUND

The following facts are taken from the first amended complaint and, for the purposes of this motion to dismiss, accepted as true. Doc. No. 28. Plaintiffs Nicholas

Brimager and Jason Graham ("Plaintiffs") were both employed as police officers by the City of Moscow Mills ("City") under the chain of command of Chief of Police Terry Foster ("Chief Foster"). Plaintiff Brimager was recruited to the City's Police Department as a Lieutenant/Assistant Chief of Police in late 2019. He often assumed the role of acting Chief of Police in Chief Foster's absence. Plaintiff Graham had been employed as police officer with the City since September 2013 and was ultimately promoted to Sergeant. Graham also handled IT issues and other technology-related responsibilities for the Police Department. Both Plaintiffs performed their duties "in a satisfactory or above-level manner."

Plaintiffs allege Chief Foster has a history, particularly with male employees, of using his physicality to ensure demands are carried out through physical intimidation and verbal reminders of his boxing skills. He is also known to accuse male subordinates of homosexuality and make homophobic remarks, and to use demeaning and gendered rhetoric, such as "fag," "homo," and "bitch," when publicly berating male subordinates that he perceives as less than masculine. He does not engage in the same behavior with female employees.

Plaintiffs allege that Chief Foster's discrimination was based in part on his perception that Plaintiffs were homosexual and "not real men." Specifically, Plaintiff Brimager claims that Chief Foster called him a "pussy" for not getting involved in CrossFit like a "real man," and told Brimager that he had a "mangina" and/or that Plaintiff Brimager was "afraid to get sand in his vagina" for not engaging in Chief Foster's chosen plan of action at the time. Plaintiff Graham claims that Chief Foster

2

called him a "pussy," "fag," "cocksucker," and "motherfucker" for the same or similar reasons.  Plaintiffs also claim that Chief Foster would often invade his subordinates' personal space and use his physicality to dissuade any questioning of his authority.  Plaintiffs allege that Chief Foster's behavior continued from at least 2019 through 2021 and 2022.

Plaintiffs further claim that in or around 2021, Chief Foster instituted an illicit ticket generating scheme which would require subordinates to issue a certain number of traffic citations every month and to target drivers who appeared financially capable of paying the ticket fines.  Plaintiffs expressed disapproval of this scheme and informed Chief Foster that they would not participate.

In response to Plaintiffs' refusal to participate in the ticket generating scheme, Chief Foster informed Plaintiffs that he would ensure that they lost their jobs as a result.  Chief Foster ratcheted up his rhetoric and name-calling, creating an environment so hostile that Plaintiffs were constructively forced out of their positions with the City.  Plaintiffs ultimately provided detailed information to the Missouri Attorney General's office about the illegal ticket generation scheme after their complaints were summarily rejected by the City.

Plaintiffs' complaint also discusses a number of other actions taken by Chief Foster to constructively force Plaintiffs out of their jobs after he found out about Plaintiffs' participation in the Attorney General's investigation.  It is unclear from the complaint whether these actions were motivated by Plaintiffs' participation in the ticket-scheme investigation, their gender/perceived sexual orientation, or a combination of both.

3

Plaintiffs claim that beginning in December 2021, Chief Foster called Plaintiffs "rats," "informants," "faggots," and other "colorful labels." Other actions taken to constructively discharge Plaintiffs included: "(a) not including Plaintiffs in certain meetings; (b) denying leave and/or training; (c) denying awards for service; (c) precluding overtime or causing the loss of overtime through abrupt schedule changes; (d) publicly disparaging Plaintiffs; (e) using obscene language towards Plaintiffs when questioned; (f) changing schedules to preclude consistency; and (g) physically intimidating Plaintiffs." Chief Foster also spread falsehoods that Plaintiffs were stealing from the City and were being fired.

This behavior eventually resulted in Plaintiffs' exhaustion of leave time and eventual resignation from their respective positions in early 2022.

Plaintiffs allege that City officials were all aware of Chief Foster's behavior and took no action to train, instruct, or discipline Chief Foster, and were otherwise complicit in his known practice of subordinate abuse.

Plaintiffs each filed a Charge of Discrimination for discrimination based on sex with the United States Equal Employment Opportunity Commission (EEOC) and were each issued a Notice of the Right to Sue. Plaintiff Brimager filed his Charge of Discrimination on December 28, 2021, and Plaintiff Graham filed his on January 4, 2022. Plaintiffs filed this action within 90 days of their receipt of their respective Notices of the Right to Sue. The matter is now before the Court on Defendants' motion to dismiss Plaintiffs' first amended complaint.

## **ARGUMENT OF PARTIES**

Defendants argue that all claims fail as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  For the gender discrimination and hostile work environment claims, Defendants assert that Plaintiffs have not established a sufficient causal link between Plaintiffs' protected class membership on the basis of gender and the adverse employment action created by Chief Foster.  For the retaliation claims, Defendants argue that Plaintiffs did not adequately plead that the adverse employment action was in response to a report of gender discrimination as required by Title VII.  For the conspiracy claim, Defendants claim that the intracorporate conspiracy doctrine prevents the City and Chief Foster from engaging in a conspiracy with one another because Chief Foster is an agent of the City.  For the § 1983 failure to train claim, Defendants assert that Plaintiffs failed to identify a constitutional right that was violated through Defendants' failure to train, instruct, supervise, or discipline.  Finally, Defendants argue that punitive damages cannot be assessed against a municipality, and therefore any claims for punitive damages against the City should be dismissed.

Plaintiffs respond that by their motion, Defendants are attempting to improperly litigate the merits of the claims, not the sufficiency of the complaint.  Plaintiffs note that the pleading standard under Rule 12(b)(6) is a lower bar than summary judgment and only requires that Plaintiffs provide a plausible claim for relief.  For claims of gender discrimination, hostile work environment, and retaliation (Counts I-VI), Plaintiffs argue that their factual allegations are more than sufficient to satisfy the pleading standard and properly allege that Defendants have engaged in illegal discrimination, retaliation, and

5

other acts of employment illegality against Plaintiffs because of their gender and perceived sexual orientation.  With respect to the conspiracy claim (Count VII), Plaintiffs do not directly respond to Defendants' arguments regarding the intracorporate conspiracy doctrine, rather, Plaintiffs argue that Defendants are using misdirection and as a means to argue Plaintiffs' claims relate entirely to the issue of the ticket generating scheme rather than the claimed gender discrimination.  Plaintiffs contend that Defendants' argument would require the Court to ignore the complaint as a whole.  Lastly, Plaintiffs argue that that they have properly alleged a violation of federally protected civil rights under Title VII sufficient to satisfy the pleading requirement of a § 1983 failure to train claim (Count VIII).

Additional facts and arguments will be discussed below as relevant to the parties' claims.

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  On a motion to dismiss, the court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party.  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).  But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegations, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## **DISCUSSION**

Gender Discrimination (Counts I and IV)

Plaintiffs' claims of gender discrimination sufficiently state a claim upon which relief can be granted.  A prima facie showing of gender discrimination claim under Title VII requires Plaintiffs to show that (1) they belong to a protected group, (2) they were meeting their employer's legitimate job expectations, (3) they suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Warmington v. Bd. of Regents Univ. of Minn.*, 998 F.3d 789 (8th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Plaintiffs need not satisfy the *McDonnell Douglas* requirements for prima facie showing at this stage, and need only show that the complained-of gender discrimination is plausible on its face. *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  However, the "elements of the prima facie cases are [not] irrelevant to a plausibility determination in a discrimination suit." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016).  The elements are "part of the background against which  a plausibility determination should be made" and the elements "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation omitted).  Through this prism, the complaint "must include sufficient factual allegations to provide the grounds on which the claim rests." *Id.* (quoting *Gregory v, Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)).  Under the "simplified notice pleading standard" that governs discrimination claims, "summary judgment motions—not motions

7

to dismiss—should dispose of most unmeritorious claims." *Wilson*, 850 F.3d at 372 (citation and internal quotations omitted).

Plaintiffs adequately plead, and Defendants do not contest, that they are members of a protected class, that they were meeting their job expectations, and that they suffered an adverse employment action.[1]  More specifically, Plaintiffs allege that Chief Foster treated males differently than females, and that "the disparate treatment of the Plaintiff[s], as practiced by Defendants and their employees . . . was of a sexually discriminatory nature, and/or discrimination based on Plaintiff[s'] gender and/or perceived sexual orientation."

Defendants argue that Plaintiffs have failed to adequately allege the fourth element: that the adverse employment action, here Plaintiffs' constructive discharge, occurred under circumstances giving rise to an inference of discrimination.  At the motion to dismiss stage, Plaintiffs need only plausibly allege but-for causation.  *See McDonough v. Anoka City*, 799 F.3d 931, 946 (8th Cir. 2015).  Here, Plaintiffs allege that they were discriminated against *because* of their gender and/or perceived sexual orientation and the discrimination caused such intolerable working conditions that they were forced to resign.  In support of these claims, Plaintiffs have alleged numerous instances of Chief Foster's discrimination, including gendered and sexually explicit name

---

[1]  Plaintiffs allege that the adverse employment action was constructive discharge—Chief Foster and the City deliberately created working conditions so intolerable and hostile that Plaintiffs were forced to resign.  "Just like any other discharge, a constructive discharge is an adverse employment action." *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821 (8th Cir. 2006).  Defendants do not dispute that an adverse employment action occurred.

8

calling. Plaintiffs have also specifically alleged that Chief Foster did not treat female employees in the same manner. *See Wells v. SCI Mgmt, L.P.*, 469 F.3d 697 (8th Cir. 2006) (explaining that a typical means of proof for the fourth element in a gender discrimination case is showing that plaintiff was treated differently from similarly situated employees of the opposite sex).

Defendants further argue that context must be considered, and that vulgar, gendered name-calling and teasing is to be expected in an environment like a police department. In assessing whether the causation factor is satisfied, the court will consider "whether there are lawful, obvious alternative explanation[s] for the alleged conduct" that would render the complaint implausible. *McDonough*, 799 F.3d at 946 (internal citations and quotations omitted). "If the alternative explanations are not sufficiently convincing, however, the complaint states a plausible claim for relief, because '[f]erreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage.'" *Id.* (citing *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011)). The fact that this pervasive gendered and sexual name-calling occurred at a police department does not render such actions permissible or so obviously lawful that it renders Plaintiffs' complaint implausible at the pleading stage.

Defendants further argue that the complaint indicates that the alleged disparate treatment by Chief Foster was caused by Plaintiffs' roles in reporting the ticketing scheme, not their gender. A plain reading of the complaint dispels this notion because Plaintiffs explicitly allege that the discriminatory conduct was because of their gender and/or perceived sexual orientation. Further, under Title VII, discrimination occurs when

9

sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). Plaintiffs have sufficiently alleged that Chief Foster's treatment was motivated, at least in part, by their gender. The fact that Chief Foster's treatment may have also been motivated by Plaintiffs' involvement in reporting the ticketing scheme does not preclude a claim of gender discrimination.

As discussed above, Plaintiffs have stated a plausible claim for gender discrimination under Title VII. Whether or not Plaintiffs can prove their claims is a matter to be resolved on summary judgment or at trial. Accordingly, Defendants' motion to dismiss Counts I and IV is denied.

Retaliation (Counts II and V)

A Title VII retaliation claim arises when an employer has taken an adverse employment action against an employee who "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Key in this definition is that the retaliation must occur in response to opposition or reporting of a *Title VII* unlawful employment practice—a complaint of discrimination. *See, e.g.*, *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023) (explaining that to establish retaliation under Title VII, "a plaintiff must prove (1) he engaged in statutorily protected activity,[2] (2) suffered an adverse

---

[2]  The *Warren* Court explained that under Title VII, a "statutorily protected activity" includes opposition to discriminatory practices prohibited by Title VII. *Warren*, 79 F.4th at 974.

10

employment action, and (3) that engagement in a protected activity is the but-for cause of the adverse employment action"); *see also Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997) ("To establish a prima facie case of retaliation, [the employee] needed to show: 1) she complained of discrimination; 2) the [employer] took adverse employment action against her; and 3) the adverse action was causally related to her complaint.").

Defendants argue that Plaintiffs have not sufficiently alleged that they complained of, or reported any sexual or gender discrimination practices because Plaintiffs have only included factual allegations regarding retaliation from reporting the ticketing scheme, which is not protected conduct under Title VII. However, Plaintiffs specifically allege that they experienced "retaliation [by Defendants] for having complained about sex/gender discrimination." Compl. ¶¶ 60, 85. While the allegations in the amended complaint are often general, Plaintiffs incorporated their EEOC charges of discrimination into their amended complaint by reference,[3] which contain more detailed factual allegations regarding their discrimination complaints.[4] Plaintiff Graham's EEOC charge

---

[3] In reviewing a motion to dismiss, the Court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695,697 n.4 (8th Cir. 2003). In addition, the Court may properly consider public records, including court records, on a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

[4] Plaintiffs' original complaint includes the EEOC charges of discrimination and related documents as exhibits. Plaintiffs' first amended complaint identifies and references these exhibits, but Plaintiffs have failed to re-attach the exhibits to their amended complaint. Plaintiffs shall provide copies of exhibits A- E to the Clerk of Court for attachment to the amended complaint.

11

of discrimination specifically alleges that he took his concerns about Chief Foster's harassment to the Mayor in June 2021 and to the City board on November 22, 2022. Doc. No. 1-5. He further alleges that after reporting the sexual harassment he was improperly prevented from using his sick leave, locked out of his place of work, and Defendants were trying to replace him and hire someone else for his position at a much higher rate of pay. *Id.* Likewise, Plaintiff Brimager's EEOC charge of discrimination specifically alleges that he was improperly prevented from using his sick leave in retaliation for reporting sexual harassment. Doc. No. 1-3. Further, Plaintiffs allege that their working environment because so intolerable that they were forced to exhaust their leave and eventually resign from their respective positions. These allegations sufficiently state a claim for retaliation under Title VII.

It is true that Plaintiffs' amended complaint contains numerous factual allegations regarding retaliation due to Plaintiffs' role in reporting the ticket generating scheme,[5] but Plaintiffs' amended complaint *also* contains sufficient factual allegations regarding their

---

[5] In their initial complaint, Plaintiffs directly asserted claims under the whistle-blowing statute, and alleged that Defendants' retaliation was a result of their conduct as whistle-blowers. While Plaintiffs removed references to the term whistle-blowing in their first amended complaint, they retained the allegations related to Chief Foster's alleged ticket-generating scheme, Plaintiffs' report of that scheme to others, and Defendants' retaliation thereafter. Opposing the ticket-generating scheme is not a protected activity under Title VII. The Eighth Circuit has rejected Title VII retaliation claims where the plaintiff opposed conduct other than a discriminatory employment practice. *Warren*, 79 F.4th at 974*; see e.g.*, *Bonn v. City of Omaha*, 623 F.3d 587, 591-92 (8th Cir. 2010) (holding that plaintiff did not engage in a protected activity under Title VII by publishing a report exposing a police department's policing tactics that were potentially discriminatory because the report did not implicate employment practices).

reports of gender discrimination and subsequent retaliation. Accordingly, Defendants' motion to dismiss Counts II and V is denied.

Hostile Work Environment (Counts III and VI)

With respect to their hostile work environment claims, Plaintiffs have failed to adequately allege that they belong to a protected group. To establish a hostile work environment claim, a plaintiff must establish the following elements: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012). Unlike Plaintiffs' discrimination claims in which they specifically allege that they were discriminated against because of their sex and incorporate allegations of harassing conduct, here Plaintiffs specifically allege that they are members of a protected group "because of [their] previous protected activity, to include reporting instances of employment illegality, and otherwise being witness to the same" and Plaintiffs' "protected activities were all contributing factors in the harassment/hostile work environment [they] endured as a result of the Defendant's actions . . . ." Protected groups under Title VII are those based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

Individuals who report instances of employment illegality are not a protected group under Title VII. As discussed above, individuals who report employment illegality under Title VII may assert a claim for retaliation, even if they themselves are not a

13

member of a Title VII protected group.  But to properly assert a hostile work environment claim under Title VII, Plaintiffs must allege that they themselves are members of a protected group recognized by Title VII and suffered a hostile work environment because they were members of that group, not just because they reported employment illegality.  Accordingly, Counts III and VI are dismissed without prejudice.[6]

Conspiracy (Count VII)

Plaintiffs fail to state a claim for conspiracy to violate civil rights as a matter of law because the complaint fails to sufficiently allege a meeting of the minds.  To survive a motion to dismiss, a §1983 conspiracy claim "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).  "The plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016) (internal citation omitted).  These facts must at least "give rise to the inference that there was such a meeting of the minds." *White v. Walsh*, 649 F.2d 560, 562 (8th Cir. 1981) (finding that specific facts of a meeting between alleged co-conspirators that the defendant was excluded from attending sufficiently stated a claim for conspiracy);

---

[6] In Plaintiffs' opposition to the motion to dismiss, they appear to argue that their hostile work environment was based on Plaintiffs' gender and Defendant Foster's assumption of Plaintiffs' homosexuality and/or being less than masculine, and as such they are members of a protected group *because* of their gender/perceived sexual orientation.  However, this is not alleged in the hostile work environment claim of Plaintiffs' first amended complaint; instead they specifically claim that they are members of a protected group *because* they reported employment illegality.

14

*Murray*, 595 F.3d at 870 (finding that "[t]he factual allegations in [Plaintiff's] complaint do not directly or indirectly suggest such a "meeting of the minds" between [Defendants] and any other alleged conspirator, and so the district court correctly decided that [Plaintiff] failed to state a claim under § 1983"); *see also Tihen v. City of Bellefontaine Neighbors*, No. 4:17-cv-1979 JMB, 2018 WL 4254097, at *12 (E.D. Mo. Sept. 6, 2018) (rejecting § 1983 conspiracy claim in Title VII case where the plaintiff failed to adequately allege a meeting of the minds).

Where the allegations are merely conclusory statements rather than specific facts, the complaint fails to state a claim. *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000). Plaintiffs' only suggestion of a "meeting of the minds" in their complaint is one conclusory sentence that Defendants "conspired together and amongst themselves and reached a mutual understanding to deny Plaintiffs their rights to a discrimination-free work environment based on gender," Compl. ¶ 101. They do not include any facts that "directly or indirectly suggest" that Chief Foster and the City reached an agreement to violate Plaintiffs' rights to equal protection. *See Murray*, 595 F.3d at 870. Accordingly, Plaintiffs have not sufficiently alleged a conspiracy claim.

There is, additionally, the issue of whether there are even the requisite number of parties for a conspiracy to occur. The intracorporate conspiracy doctrine recognizes that a corporation and its agents are a single person and therefore cannot conspire with itself. *L.L. Nelson Enters. v. Cnty. of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012). This gives rise to the question of whether a police officer can conspire with its employing entity, in this case, the City. The Eighth Circuit has not definitively addressed whether the

15

intracorporate doctrine applies to § 1983 conspiracy claims. *See Faulk v. City of St. Louis*, 30 F.4th 739, 749 (8th Cir. 2022) ("[W]e have never definitively addressed the issue whether the [intracorporate conspiracy] doctrine applies to § 1983 conspiracy claims"); *Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) (same).[7] However, in each of those cases, the complaint alleged that multiple police officers conspired with one another to violate plaintiffs' civil rights. Here, Plaintiffs allege that a single police officer—Chief Foster— conspired with the City. The complaint does not allege or name any other individuals involved in the conspiracy.[8]

In any event, Plaintiffs have failed to allege a "meeting of the minds" with sufficient specificity. Accordingly, Count VII is dismissed without prejudice.

§ 1983 Failure to Train (Count VIII)

The § 1983 failure to train claim requires a pleading that some constitutionally protected right belonging to the Plaintiffs was violated as a result of a failure to train, instruct, supervise, control, and/or discipline. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Defendants argue that Plaintiffs fail to identify the specific constitutional right violated, and that therefore Count VIII is deficient. Doc. No. 30 at 9. While it is true that Plaintiffs do not assert the specific constitutional right in Count VIII, they

---

[7] However, the Eighth Circuit has explicitly held that the intracorporate conspiracy doctrine applies to § 1985 claims, and a local government cannot conspire with its own agents. *See L.L. Nelson Enters. v. Cnty. of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012); *Kelly v. City of Omaha*, 813 F.3d 1070, 1078 (8th Cir. 2016).

[8] At best Plaintiffs claim that the City failed to intervene or prevent Chief Foster's actions.

16

reallege and incorporate the previous paragraphs, which do contain an assertion of a specific constitutional right.  Compl. ¶¶ 107, 101 (identifying Plaintiffs' "right to equal protection under the laws and federal statutory rights to be free from discrimination, retaliation and a hostile work environment").  The right to equal protection is a specific right cognizable under § 1983.  *See Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007) (stating that Plaintiffs' "right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment"); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) ("We have held intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983.").

Given that Plaintiffs have identified the underlying federal right that was violated by the City's failure to train, instruct, supervise, control, and/or discipline, Defendants' argument is without merit.[9]  As such, Count VIII will not be dismissed.

Punitive Damages

Defendants argue, and Plaintiffs concede in their response, that municipalities may not be found liable for punitive damages under 42 U.S.C. § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Accordingly, Plaintiffs' claims for

---

[9]     Plaintiffs' failure to train claim is asserted against both Defendants, but it is not entirely clear to the Court how Plaintiffs are asserting a failure to train claim against Chief Foster given that their underlying constitutional violations are asserted directly against Chief Foster.  However, because Defendants have not raised this argument, the Court will not address the issue at this juncture.

17

punitive damages against the City will be dismissed with prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.  Doc. No. 29.  Counts III, VI, and VII are dismissed without prejudice, and Plaintiffs' claims for punitive damages against the City are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs shall have until **December 27, 2023,** to seek leave to amend their complaint.  Any motion for leave to amend must be in compliance with Local Rule 4.07.

**IT IS FURTHER ORDERED** that Plaintiffs are instructed to provide copies of the exhibits of the complaint to the Clerk of Court for attachment to the first amended complaint.

Dated this 13th day of December, 2023.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE